(79 South. 19)

### MANNING et al. v. YEAGER et al.
### (6 Div. 704.)

(Supreme Court of Alabama.   April 4, 1918.)

1. RELIGIOUS SOCIETIES ⊜24—JURISDICTION OF COURTS TO DETERMINE PROPERTY RIGHTS.

The right of the majority members of a congregational church to use the church property for purposes of worship is a civil right' which equity has jurisdiction to protect and prevent the trust property from being diverted to another use.

2. RELIGIOUS SOCIETIES ⊜25—ACTION BETWEEN CHURCH MEMBERS—PLEADING.

A bill by majority members of a congregational church, charging that a minority of members have unlawfully excluded complainants from the church property, threatening complainants with violence, and expressly averring that the court's jurisdiction is sought to be invoked, not as to any religious or ecclesiastical controversies, but to protect property rights, is not demurrable.

3. PLEADING ⊜35—SURPLUSAGE. '

In a bill for protection of church property rights by complainants as majority members of the church · and also "as deacons," the words "as deacons" may be construed as surplusage, or as merely descriptio personæ, and as not affecting the right of complainants to maintain the bill as members.

Appeal from Circuit Court, Cullman County; K. C. Brickell, Judge.

Suit in equity by J. F. Manning and others against T. C. Yeager and others. From a decree for respondents, complainants appeal. Reversed and rendered.

The bill of complaint as amended alleges, in substance, that in 1891 the 'Missionary Baptist Church at Concord was organized in Cullman county, Ala., for the sole purpose of the worship of God, and that said church was congregational in its nature, and was governed exclusively by the will of its members in good standing, with no superior or directing power other than is found in the government of the church by its own members; that the church property, being the church house with the real estate upon which the same is situated, was conveyed to the Missionary Baptist Church at Concord by warranty deed in November, 1898, by C. D. Yeager and wife, a copy of which deed is attached to the bill as amended. The bill further alleges complainants and respondents were members of said church, and that complainants are also officers in good standing and fellowship; that respondent Nixon was pastor of said church, and had been continuously causing strife among the members, advancing strange and fancied doctrines, repudiating many of the cherished tenets of the true Baptist faith.

The bill also alleges that for many years the Missionary Baptist Church at Concord had been a member, in good standing, of the Cullman County Baptist Association, and on October 24, 1916, while the Cullman County Baptist Association was in regular session at Hopewell, Cullman county, respondent Nixon, without authority from the church, sought to withdraw from the said association. Whereupon complainants objected, and the church was permitted to remain in said association, and the said Nixon withdrew with his small band of followers from further connection with the association. The bill alleges that respondents, influenced by said Nixon, have left the original faith of their fathers, and have sought to change the name of the original church to that of "Landmark Baptist Church"; that respondents have unlawfully and forcibly taken charge of the church house, locked the doors of same, and denied to complainants the right to worship therein, and have threatened to do violence to complainants if they insist in using said church for worship; that complainants have made repeated demands on respondents to deliver up the church building and records that 'they 'might hold services therein, but respondents have declined to do so.

The bill seeks injunctive relief against the respondents for such interference, and contains the general prayer for relief. The concluding part of the fifth paragraph of the bill as amended reads as follows:

"The complainants allege and show that these respondents are not and do not represent a majority of the members of the said Missionary Baptist Church, but that the respondents are only minority members of said church as aforesaid; and as such minority members, have wrongfully, forcibly, and unlawfully taken possession of the church house to the exclusion of your complainants; and your complainants aver that they are not, by this bill, seeking to invoke the jurisdiction of the courts as to any religious or ecclesiastical controversy in and by the members of said church, but merely that your complainants be protected in their property rights in and to the church property in the bill."

Demurrer to the bill as amended was sustained, and from this decree the complainants prosecute this appeal.

A. A. Griffith and Earney Bland, both of Cullman, for· appellants. W. E. James, of Cullman, and Tennis Tidwell, of Albany, for appellees.

.GARDNER, J.  It is insisted by counsel for appellees that the courts will not interfere in a .controversy between the different factions in a church or ecclesiastical body growing out of a disputed question of religious dogma or church faith. Whether or not the bill in this case comes within the influence of that doctrine is treated by counsel for the respective parties as the question of prime importance on this appeal.

The bill shows that the complainants are members and officers in good standing of the Missionary Baptist Church at Concord, and that respondents, representing only a minority of the membership of said church, have wrongfully, forcibly, and unlawfully taken

possession of the church house to the exclusion of the said complainants; that respondents have left the faith and repudiated many of the cherished tenets of the true Baptist faith and order, and have undertaken to change the name of the original church; have locked the doors to the church house, placing new locks thereon, and have denied to complainants the right of worshipping therein, threatening them with violence if they insist in using said church in which to worship.

We recognize of course the general principle, as contended for by counsel for appellees, that the civil courts have steadily declined to assume any jurisdiction as regards the purely ecclesiastical or spiritual feature of the church. However, as was said by this court in Christian Church of Huntsville v. Sommer, 149 Ala. 145, 43 South. 8, 8 L. R. A. (N. S.) 1031, 123 Am. St. Rep. 27:

"On the other hand, the civil courts have, without hesitation, exercised their jurisdiction to protect the temporalities of the church. The court of chancery should and does exert its powers, in a proper case, to prevent the perversion of the trust estate from the charitable use of which it is devoted. When an estate is warrantably brought into a court of equity for its action, that court takes cognizance of the use to be conserved, and will send its process to protect the proper use. Equity favors charities, and possesses inherent jurisdiction to deal therewith."

Again, in Morgan v. Gabard, 176 Ala. 568, 58 South. 902, this court, speaking on this subject, said:

"There is no doubt that the general purpose and theory of the bill would invoke a well-recognized phase of equity jurisdiction, viz. to prevent the diversion of property from devotion to a lawful trust. * * * This protective jurisdiction of equity may be invoked by members, or by representative officers of the church, or both, who would protect the trust property, from diversion to another purpose. * * * The fact that the legal title to the property does not in such case reside in the complaining members or representative officers cannot defeat or deny the power of equity to send its process to preserve the property from diversion from the use to which it is and must be devoted; for it is not within the power of any, even the repository of the legal title, to deflect the property to a perverting use."

The following quotation from Harmon v. Dreher, Speer's Eq. (S. C.) 87, found in Harris v. Cosby, 173 Ala. 81, 55 South. 231, is also pertinent:

"When a civil right depends upon an ecclesiastical matter, it is the civil court, and not the ecclesiastical court, which is to decide. But the civil tribunal tries the civil right, and no more, taking the ecclesiastical decisions out of which the civil right arises as it finds them."

As said by this court in Hundley v. Collins, 131 Ala. 234, 32 South. 575, 90 Am. St. Rep. 33:

"Civil courts deal only with civil and property rights. If, to determine a property right, it becomes necessary to adjudicate an ecclesiastical question, the courts will go only so far as is necessary to determine the effect of the ecclesiastical law or relations on property rights."

See, also, Gewin v. Mt. Pilgrim Baptist Ch., 166 Ala. 345, 51 South. 947, 139 Am. St. Rep. 41; Barton v. Fitzpatrick, 187 Ala. 273, 65 South. 390; Mt. Helm Baptist Ch. v. Jones, 79 Miss. 488, 30 South. 714; Roshi's Appeal, 69 Pa. 462, 8 Am. Rep. 275.

[1, 2] As members in good standing of this church, the complainants had the right to use the property for the purpose of worship, and the use of this property for this purpose is therefore a civil right, and comes within the principle announced in the above-cited authorities, giving a court of equity jurisdiction thereof, and to prevent the trust property from being diverted to another purpose. The bill charges that respondents, representing a minority membership, unlawfully excluded the complainants from the church property, threatening them with violence; and expressly avers that they do not seek to invoke the jurisdiction of the court as to any purely religious or ecclesiastical controversies, but merely that they may be protected in their property rights in and to the church property. We are of the opinion the bill contains equity, and that the demurrer thereto was improperly sustained.

[3] As we construe the bill, it was filed by the complainants as members of the church in question and also "as deacons." If it be conceded, as insisted by counsel for appellees under the authority of Stewart v. White, 128 Ala. 202, 30 South. 526, 55 L. R. A. 211, that the office of deacon confers no right to sue in an official capacity, yet we are of the opinion, under the construction of the bill as above indicated, the words "as deacons" may be construed as surplusage, or as merely descriptio personæ, and as not affecting the right of complainants to maintain the suit as members of said church.

It results that the decree of the court below will be reversed, and one here rendered overruling the demurrer. It is also ordered that the respondents may answer the bill within 30 days.

Reversed and rendered.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.