141 So. 700

**DUNN et al. v. ELLISOR.**

4 Div. 622.

Supreme Court of Alabama.

May 12, 1932.

E. O. Baldwin and Robt. S. Reid, both of Andalusia, for appellants.

A. R. Powell, of Andalusia, for appellee.

FOSTER, J.

The deed here under consideration conveyed a dwelling house and lot in Andalusia, Ala., to persons named as "Trustees of Methodist Episcopal Church, South, Andalusia, Alabama, and their successors in office and assigns to be held in trust and used as a district parsonage for Andalusia District," of that church organization.

The Andalusia district is alleged to have disbanded, and the local church is in what is designated as the Troy district under the same denominational control.

There is a power shown to exist in the "doctrine and discipline" of the church to mortgage the district parsonage in order to borrow money "by the consent and authority of the District Conference or two-thirds of the district stewards." The Andalusia district now has no such conference nor stewards. But, if the property is held for the benefit of the local church, the authority and consent of the quarterly conference of the church there located is all that is required by the discipline. The trustees named in the deed were trustees of the local church and not of the district. They claim, therefore, that the property is now in fact and in equity local church property, and may be mortgaged as such by authority of the church discipline.

We will take judicial knowledge of the well-known plan of church government of that denomination, though not the provisions of the "doctrines and discipline," which are a detail of such plan. Malone v. Lacroix, 144 Ala. 648, 41 So. 724; Blount v. 16th St. Baptist Church, 206 Ala. 423, 90 So. 602. Under it, local churches are united into districts under the leadership of a minister of that faith called the presiding elder, who is furnished a home situated in it during the term of his service, and such home is called the district parsonage.

The trial court held that the property here in question is a district parsonage, and that a proper interpretation of the deed is that it was intended (as shown by its terms and concurring conditions) to be held and used as a district parsonage, under the rules and regulations prescribed by the discipline of the denomination; therefore that it is property which under such discipline may be mortgaged only by authority of the district conference and district stewards, and that such authority is not shown.

The effect of the decree is that the title to the property is held by the trustees of the local church, and that under the discipline of the church it can be mortgaged by the trustees of such church, who are made trustees of this property, provided two-thirds of the district stewards consent, and by authority of the district conference of such district in which the parsonage is situated, though not the Andalusia district, as constituted when the deed was executed. That interpretation would be clearly correct if the trust clause

in the deed had merely provided for its use as a district parsonage, without naming the district. We know of no reason why a district cannot have the ownership of two such parsonages, and each would be subject to the discipline fixing the manner of its disposition. No less so because trustees of the local church are named as trustees of the parsonage. The difficulty is due to the terms of the trust that it shall be held and used as such parsonage for the Andalusia district, which now has no existence as such.

For the purpose of the discussion, we assume this to be a charitable trust (Lovelace v. Marion Institute, 215 Ala. 271, 110 So. 381; Tarver v. Weaver, 221 Ala. 663, 130 So. 209; Crim v. Williamson, 180 Ala. 179, 60 So. 293; Johnson v. Holifield, 79 Ala. 423, 58 Am. Rep. 596), and that it cannot be used under present conditions exactly pursuant to the terms of the trust, though its use as intended is available. Present conditions may be again changed so that the Andalusia district, even as then constituted, may be reinstated, so that it could be again used exactly pursuant to the trust; for we may also judicially know that such districts are subject to change and rearrangement by the proper authorities of the church. All of this argues to the correctness of the conclusion of the chancellor that the property has not become beneficially owned for the local church.

In the case of Lovelace v. Marion Institute, supra, this court, while showing that the cy pres doctrine does not exist, described "the equitable doctrine of approximation in virtue of which the court of chancery exercises jurisdiction merely to vary the details of administration in order to preserve the trust and carry out the general purposes of the donor." In the exercise of such jurisdiction it may "vary the precise terms of a charitable trust when necessary" to effectuate the purpose of the grantor in making the trust; and it is in the nature of a judicial construction of the trust as intended by the grantor when considered in the light of changed conditions, but does not take the place of, nor is it the same as, the cy pres doctrine. Therefore, when the intention of the grantor cannot be effectuated on account of changed conditions, the trust property will revert to the grantor or his heirs. The court will not apply it to a use not contemplated by the grantor under the terms of the trust, although it may be kin to that expressed. King v. Banks, 220 Ala. 274, 124 So. 871.

Interpreting the trust clause of the deed in this case, we think that the property was clearly intended, as expressly stipulated, for use as a district parsonage, and not for the direct benefit of the local church to apply to other uses not contemplated by the discipline for such parsonage. It cannot under present conditions be used for a district parsonage of the Andalusia district as constituted when the deed was made. But, by an application of the doctrine of approximation, the use quite closely approximating that specified in the deed, and which we think carries out the intention of the grantor, is that it shall be a district parsonage for the district in which it is located. This interpretation is not distinguishable to any material 'extent from the use expressed. The fact that the trustees are those of the local church does not discredit this construction of the deed. The trustees may be named wholly outside the membership of the denomination, and the beneficial use be that of a district parsonage, and, if it appears that it was intended to be controlled as such by the discipline of the denomination, the trustees could be required in equity to conform to the procedure to be conducted under its direction as a part of the trust, the same as though expressed in the deed.

No other provision of the "doctrines and discipline" of the denomination has been called to our attention which affects the question.

Our judgment is that the chancery court correctly held that the authority to manage, mortgage, and dispose of the property is pursuant to the requirements of the discipline applicable to a district parsonage within the district where it is located, and that the trustees named in the deed and their successors shall abide by and observe the direction of such authority as the discipline prescribes for such parsonage property.

The decree of the chancery court is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.